1

2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| ROSEMARY D'AUGUSTA, et al., | Case No. 22-cv-01979-JSW |
| Plaintiffs, | |
| v. | ORDER GRANTING MOTIONS TO DISMISS AND DENYING MOTIONS FOR LEAVE TO SUPPLEMENT THE COMPLAINT AND FOR RECONSIDERATION |
| AMERICAN PETROLEUM INSTITUTE, et al., | |
| Defendants. | Re: Dkt. Nos. 85, 86, 108, 109 |

*United States District Court*
*Northern District of California*

        Now before the Court are the motion to dismiss filed by defendants American Petroleum

Institute, Chevron Texaco Capital Corporation, Continental Resources Inc., Devon Energy

Corporation, Energy Transfer LP, Exxon Mobil Corporation, Occidental Petroleum Corporation,

Phillips 66 Company (collectively, "Defendants") and the motion to dismiss filed separately by

defendant Energy Transfer LP ("Energy Transfer").  Also before the Court are the motions filed

by Plaintiffs for leave to supplement their complaint and for reconsideration of this Court's order

dated August 22, 2022, denying Plaintiffs' request for leave to depose third-party witness, Jared

Kushner.

        The omnibus motion to dismiss filed by Defendants is GRANTED without leave to amend

and the motion to dismiss filed by Energy Transfer is GRANTED.  Plaintiffs' motion for leave to

supplement the complaint and for leave to file a motion for reconsideration for are DENIED.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BACKGROUND**

Plaintiffs, consumers of gasoline in the four years prior to filing suit, allege an antitrust conspiracy between the United States, Saudi Arabia, Russia, and Defendants.  Plaintiffs allege that Defendants "agreed among themselves, and with Saudi Arabia and Russia, to cut the production of oil, to remove and store excess oil supply, to limit future exploration and production of oil, and to stop the price war that had erupted between Saudi Arabia and Russia, all for the purpose and with the intended effect to raise the price of oil and gasoline and other fuels in the United States and elsewhere." (Complaint at ¶ 43.)  Plaintiffs assert that the sovereign nations and Defendants formed their conspiracy as an integral part of a global settlement of a price war between Saudi Arabia and Russia.  (*Id.* at ¶¶ 1, 7-9.)

Omitting any reference to the onset of the Covid-19 global pandemic, Plaintiffs assert that the price war started in March 2020 after Russia repudiated a prior agreement with OPEC to limit oil production, Saudi Arabia retaliated by announcing plans to increase production, and Russia responded by also increasing production.  (*Id.* at ¶¶ 7-9.)  Plaintiffs allege that as prices for oil and gasoline continued to fall, Defendants agreed to cut their production and reduce new investment in exploration and production in an attempt to stem the price reductions.  (*Id.* at ¶¶ 16, 18.)  Plaintiffs allege that then-President Trump heralded the free market and praised the reduction in oil prices and then, after contact with some of the Defendant oil companies, agreed to meet with them to discuss the price war.  (*Id.* at ¶¶ 20-22.)  Plaintiffs allege that discussion with some Defendants, Trump sought agreement with Saudi Arabia and Russia to stop the price war and then met with the Defendants' CEOs on Friday, April 3, 2020.  (*Id.* at ¶¶ 22-25.)  Although the meeting itself was held in secret, allegedly, as "a condition of calling off the price war," Saudi Arabia and Russia required that the United States, Canada, and Mexico "agree to cut production."  (*Id.* at ¶ 29.)  As a result of political maneuvering, Plaintiffs allege that "the American oil companies agreed to cut production by 2 million barrels per day (or 3 million barrels per day) by the end of the year as a quid pro quo for the cessation of the price war, just as Russia and Saudi Arabia had demanded."  (*Id.* at ¶ 37.)  As a result of capitulating to foreign demand, [c]ompetition in the oil industry was eliminated."  (*Id.* at ¶ 38.)

1   Plaintiffs further allege that by "reason of these agreements, the price of oil and gasoline

2   was substantially increased … [and] the price of oil and the price of gasoline would be

3   substantially less than what they have become as a result of these agreements, and inflation would

4   have been far less, if non-existent."  (*Id.* at ¶ 44.)  Plaintiffs assert that, as consumers of gasoline,

5   they "have been harmed and continue to be threatened with harm and damage in that they have

6   been deprived of price competition that they otherwise would have enjoyed but for the

7   Defendants' anticompetitive agreement to reduce the production of oil in order to raise the price of

8   oil and gasoline."  (*Id.* at ¶ 67.)

9   Based on these allegations, Plaintiffs assert claims under Sections 1 and 2 of the Sherman

10   Act and Section 7 of the Clayton Act.  The Defendants moved to dismiss in an omnibus motion as

11   well as defendant Energy Transfer moving to dismiss separately.  In addition, Plaintiffs move for

12   leave to supplement their complaint and for reconsideration of the Court's order denying leave to

13   depose Kushner.

14   The Court shall address other relevant facts in the remainder of its order.

15                                                **ANALYSIS**

16   **A.    Motion to Dismiss filed by All Defendants.**

17       **1.    Legal Standard Pursuant to Federal Rule of Civil Procedure 12(b)(6).**

18   Defendants move to dismiss for failure to state a claim under Federal Rule of Civil

19   Procedure 12(b)(6).  Under Rule 12(b)(6), a court generally "is limited to the allegations in the

20   complaint, which are accepted as true and construed in the light most favorable to the plaintiff."

21   *Lazy Y Ranch LTD v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Even under the liberal

22   pleadings standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide

23   the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

24   formulaic recitation of the elements of a claim for relief will not do."  *Bell Atlantic Corp. v.*

25   *Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

26   Pursuant to *Twombly*, a plaintiff must not allege conduct that is conceivable but must allege

27   "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.  "A claim has facial

28   plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable

United States District Court
Northern District of California

3

1    inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662,

2    678 (2009) (citing *Twombly*, 550 U.S. at 556).

3            If a plaintiff fails to state a claim, a court should grant leave to amend, unless amendment

4    would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook,*

5    *Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

6    However, if a plaintiff has previously amended a complaint, a court has "broad" discretion to deny

7    leave to amend. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (quoting *Ascon*

8    *Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).

9            **2.      Legal Standard Pursuant to Federal Rule of Civil Procedure 12(b)(1).**

10           Defendants also move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).

11   The Court evaluates challenges to Article III standing under Federal Rule of Civil Procedure

12   12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (motion to dismiss for lack

13   of standing governed by Rule 12(b)(1)). Where, as here, a defendant makes a facial attack on

14   jurisdiction, the factual allegations of the complaint are taken as true. *Fed'n of African Am.*

15   *Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). Plaintiffs are then entitled to

16   have those facts construed in the light most favorable to them. *Id.*

17           The "irreducible constitutional minimum" of standing consists of three elements: an injury-

18   in-fact, causation, and redressability. *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing

19   *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Plaintiffs must prove each element with

20   the same manner and degree of evidence required at each stage of the litigation. *Lujan*, 504 U.S.

21   at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's

22   conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace

23   those specific facts that are necessary to support the claim.'" *Id.* at 561 (quoting *Lujan v. Nat'l*

24   *Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). Because Plaintiffs are the parties invoking federal

25   jurisdiction, they "bear[] the burden of establishing these elements." *Id.*

26           Defendants argue that, under several doctrines, Plaintiffs lack standing to file suit. Thus,

27   they move to dismiss pursuant to Rule 12(b)(1). In addition, Defendants contend that even if the

28   matter was justiciable and Plaintiffs had standing to make their claims, Plaintiffs fail to state a

4

1    claim upon which relief can be granted pursuant to Rule 12(b)(6).

2       **3.**    **Political Question Doctrine.**

3       The political question doctrine bars courts from making any determination of issues that

4    the Constitution commits to the political branches of government.  Adjudication of those claims is

5    jurisdictionally barred.  Under the political question doctrine, a court "lacks authority to decide the

6    dispute before it" when a case involves a "textually demonstrable constitutional commitment of

7    the issue to a coordinate political department; or lack of judicially discoverable and manageable

8    standards for resolving it."  *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 195 (2012)

9    (quoting *Nixon v. United States*, 506 U.S. 224, 228 (1993)).  Courts lack jurisdiction to adjudicate

10   "those controversies which revolve around policy choices and value determinations

11   constitutionally committed for resolution to the halls of Congress or the confines of the Executive

12   Branch."  *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 203 (1986).

13      Here, Plaintiffs contend that the former President of the United States and his

14   administration were instrumental in negotiating an end to an international price war over the cost

15   of petroleum products.  It is well-established that allegations of a conspiracy among American

16   corporations and foreign sovereigns raise non-justiciable political questions.  *See, e.g., Spectrum*

17   *Stores, Inc. v. Citgo Petroleum Corp.*, 632 F3d. 938, 950 (5th Cir. 2011) (holding that matters

18   relating to the conduct of foreign relations is committed exclusively to the political branches of

19   government and largely immune from judicial inquiry or interference) (citing *Haig v. Agee*, 453

20   U.S. 280, 292 (1981)).  Plaintiffs here are barred by the political question doctrine from

21   questioning foreign policy decisions of the coordinate branches of government.  The complaint

22   alleges that President Trump, in negotiating a fix to the international price war, sought an

23   agreement among the American oil companies together with Saudi Arabia and Russia to agree to

24   limit production and exploration of oil.  (*See* Complaint at ¶ 1 ("Plaintiffs allege that the

25   Defendants combined and conspired between and among themselves and with Saudi Arabia and

26   Russia to raise the price of oil and gasoline."); ¶ 34 ("The American oil companies had agreed to

27   the demands of Saudi Arabia and Russia.  The cartel now included the Americans."); ¶ 37 ("Thus,

28   the American oil companies agreed to cut production … as a quid pro quo for the cessation of the

United States District Court
Northern District of California

price war, just as Russia and Saudi Arabia had demanded.")).  Plaintiffs allege that

> [f]rom the beginning of the conspiracy and as an integral part of its success, the plan of the Defendant oil companies and API was to cajole and persuade former President Trump into abandoning any notion of the free enterprise principles, and, instead,  to convince his "friends" Vladimir Putin of Russia and the Crown Price of Saudi Arabia to end their price war, and to commit to a substantial reduction of their production so that the prices for oil and gasoline could increase to the substantial benefit of all producers, and to the substantial and catastrophic detriment of all consumers, and others who rely on oil and gasoline in their businesses, including, commuters, vacationers, and citizens just driving to the store.

(*Id.* at ¶ 40.)

The facts proffered by Plaintiffs clearly include Russia and Saudi Arabia as indispensable members of the alleged conspiracy and include questioning the foreign policy decisions of President Trump and his administration.  Although in opposition, Plaintiffs argue that they have alleged an independent and completely domestic conspiracy, the actual allegations in the complaint confirm a purported global, not just private or domestic agreement, between Saudi Arabia, Russia, and the United States to cut production of oil.  The allegations include specific foreign policy decisions allegedly made by the Trump administration in furtherance of the alleged conspiracy.

The court lacks jurisdiction over a complaint that "requires and inquiry into" whether foreign nations entered an agreement with Defendants at the behest of the President of the United States.  *See Spectrum Stores*, 632 F.3d at 951 (holding that adjudicating the legality of the actions of foreign states would trench on "delicate foreign policy questions" and would also require the Court to "reexamin[e] critical foreign policy decisions, including the Executive Branch's longstanding approach of managing foreign relations with foreign oil-producing states through diplomacy rather than private litigation.").  Accordingly, the Court finds that the claims not justiciable and barred by the political question doctrine.

### 4.     Act of State Doctrine.

The act of state doctrine declares that a United States court will not adjudicate a politically sensitive dispute which would require the court to judge the legality of the sovereign act of a foreign state.  *International Ass'n of Machinists and Aerospace Workers v. Organization of the*

United States District Court
Northern District of California

United States District Court
Northern District of California

*Petroleum Exporting Countries (OPEC)*, 648 F.2d 1354, 1358 (9th Cir. 1981).  The doctrine "recognizes the institutional limitations of the courts and the peculiar requirements of successful foreign relations."  *Id.*  The political branches of government are uniquely suited "to consider the competing economic and political considerations and respond to the public will in order to carry on foreign relationships in accordance with the best interests of the country as a whole.  The courts, in contrast, focus on single disputes and make decisions on the basis of legal principles."  *Id.*  Like the political question doctrine and similarly derived from the respect of the separation of powers, the act of state doctrine "requires that the courts defer to the legislative and executive branches when those branches are better equipped to resolve a politically sensitive question."  *Id.*

Here, the act of state doctrine bars this suit as Plaintiffs explicitly involve the sovereign countries – Russia and Saudi Arabia – and their management of their own respective petroleum resources.  As pled, these countries are indispensable co-conspirators in the alleged scheme to cut production and they demanded Defendants' cooperation in the conspiracy as a "quid pro quo" for ending the price war.  (*See* Complaint at ¶¶ 37-39.)  The Court finds that Plaintiffs' direct challenge to the official acts of foreign nations to limit their oil production and demand that Defendants do the same, are acts of state beyond the jurisprudential scope of this Court's authority.  Accordingly, the Court finds that the claims are independently barred by the act of state doctrine.

### 5.   *Noerr-Pennington* Doctrine.

The First Amendment guarantees the "right of the people … to petition the Government for a redress of grievances."  U.S. Const. amend. I.  The *Noerr-Pennington* doctrine derives from this constitutional guarantee.  Generally, it holds that an individual who petitions the government for redress will be immune from any statutory liability for their petitioning conduct.  *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929, 934 (9th Cir. 2006) (citing *Empress LLC v. City & County of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005)).  The doctrine "immunizes petitions directed at any branch of government, including the executive, legislative, judicial and administrative agencies."  *Manistee Town Center v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000).  Under the *Noerr-Pennington* doctrine, "[c]oncerted efforts to restrain or monopolize trade by petitioning

1    government officials are protected from antitrust liability." *Allied Tube & Conduit Corp. v. Indian*

2    *Head, Inc.*, 486 U.S. 492, 499 (1988).

3          The allegations in the complaint, taken as true at this procedural posture, amount to

4    Defendants advocating to the former President and his administration for a diplomatic solution to

5    the global price war over petroleum products.  Petitioning the President to use diplomacy to end a

6    price war among sovereign states is constitutionally protected activity and "federal antitrust laws

7    … do not regulate the conduct of private individuals in seeking anticompetitive action from the

8    government." *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 379-80 (1991).  The

9    complaint describes a conspiracy relating to the United States government's action in response to

10   Defendants' alleged petitioning.  Plaintiffs allege that Defendants publicly advocated for a

11   solution to the price war and suggested methods for stabilizing the global oil market to the

12   President and his administration.  (Complaint at ¶¶ 14, 15, 22-23, 25-26, 34.)  This lobbying effort

13   is "protected petitioning activity [under] … *Noerr-Pennington*."  *See B&G Foods N. Am., Inc. v.*

14   *Embry*, 29 F.4th 527, 540 (9th Cir. 2022).  Taken as true, the complaint alleges that Defendants

15   sought to have the President engage in diplomatic negotiations to end the price war.  This conduct

16   is protected by the *Noerr-Pennington* doctrine from antitrust liability.

17         Accordingly, the Court finds that the motion to dismiss filed by all defendants can be

18   granted on the basis that the claims are barred by the political question doctrine, the act of state

19   doctrine, and the *Noerr-Pennington* doctrine.  These jurisprudential bars to this litigation are each

20   sufficient to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

21   However, the Court also finds that Plaintiffs have failed plausibly to state a claim by which relief

22   can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs have failed to

23   allege sufficient facts to demonstrate the basis for any claim for antitrust violation, that is, they

24   have failed to allege facts to support a plausible inference of an unlawful agreement among

25   Defendants, including the "who, did what, to whom (or with whom), where, and when."  *In re*

26   *Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 n.6 (9th Cir. 2015).  The bare

27   assertion that Defendants "agreed to take any surplus oil off the market, cut their production, and

28   substantially reduce their investment in exploration and production" is insufficient alone to

United States District Court
Northern District of California

1    support the claim of an unlawful agreement.  (Complaint at ¶ 16.)  The complaint simply does not

2    allege sufficient plausible facts detailing any such agreement.  In addition, during the same time

3    period when oil and gasoline prices increased, the world faced the Covid-19 pandemic, which

4    gave rise to stay-at-home orders, economic collapse, and plunging demand for gasoline and other

5    fuels.  This provides another explanation, omitted entirely from the complaint, for a significant

6    drop in demand and consequent production cuts by oil companies.  Although if given leave, the

7    Plaintiffs might ostensibly plead additional facts giving rise to an inference of an unlawful

8    agreement, because the Court finds the antitrust claims are barred by several applicable

9    jurisprudential doctrines, the Court GRANTS Defendants' omnibus motion to dismiss without

10   leave to amend.

11   **B.      Motion to Dismiss Filed by Defendant Energy Transfer.**

12           Defendant Energy Transfer joins in the omnibus motion to dismiss filed on behalf of all

13   Defendants and also files a motion separately to dismiss on the basis that the Court lacks personal

14   jurisdiction over the company.  First, Energy Transfer argues that Plaintiffs fail to allege that the

15   defendant produces or sells oil or gasoline or that it specifically took any action that affected oil

16   and gasoline prices.  In fact, the Complaint states that the defendant transports only natural gas and

17   propane.  (Complaint at ¶ 79.)  Second, Energy Transfer contends that there are no specific

18   allegations that Plaintiffs purchased anything from the company.  Third, Plaintiffs do not identify

19   any merger or acquisition by Energy Transfer in the relevant time frame or any transaction that

20   may have affected gasoline purchased by Plaintiffs.  Lastly, although Energy Transfer concedes

21   that it may be served in California, there are no allegations supporting the contention that this

22   Court has personal jurisdiction over the company as it is not incorporated or have its principal

23   place of business in the State and there are no allegations of the company doing business in the

24   State or specific targeting activity in the jurisdiction.  *See* 15 U.S.C. ¶ 22.  Accordingly, the Court

25   lacks personal jurisdiction over defendant Energy Transfer.[1]  Although the Court would grant

26   leave to amend to allege specific facts which may give rise to the exercise of personal jurisdiction,

27   _____

28   [1] The Court finds that it similarly lacks personal jurisdiction over Defendants API, Continental, Devon, Exxon Mobile, Hilcorp, and Phillips 66 as non-California Defendants.

1    the Court has already found that the claims are barred.

2    **C.    Motion for Leave to Supplement the Complaint.**

3        **1.    Legal Standard.**

4        Plaintiffs seek leave to file a supplemental pleading under Federal Rule of Civil Procedure

5    15(d) to add Hess Corporation as a defendants and to add detailed representations made by

6    Kusher.  Under Rule 15(d), "[o]n motion and reasonable notice, the court may, on just terms,

7    permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event

8    that happened after the date of the pleading to be supplemented."  Fed. R. Civ. P. 15(d); *see also*

9    *Eid v. Alaska Airlines, Inc.,* 621 F.3d 858, 874 (9th Cir. 2010) ("Rule 15(d) provides a mechanism

10   for parties to file additional causes of action based on facts that didn't exist when the original

11   complaint was filed.").  Supplementation is generally favored as "a tool of judicial economy and

12   convenience." *Keith v. Volpe,* 858 F.2d 467, 473 (9th Cir. 1988).  "To determine if efficiency

13   might be achieved, courts assess 'whether the entire controversy between the parties could be

14   settled in one action.'"  *Id.* (citation and ellipses omitted).  "The clear weight of authority ... in

15   both the cases and the commentary, permits the bringing of new claims in a supplemental

16   complaint to promote the economical and speedy disposition of the controversy."  *Id.*

17       "The legal standard for granting or denying a motion to supplement under Rule 15(d) is the

18   same as for amending one under 15(a)."  *Paralyzed Veterans of America v. McPherson,* No. C 06-

19   4670 SBA, 2008 WL 4183981, at *26 (N.D. Cal. Sept. 9, 2008).  The five factors commonly used

20   to evaluate the propriety of a motion for leave to amend (and thus, a motion to supplement) are:

21   (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure of

22   previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the

23   amendment.  *See Foman v. Davis,* 371 U.S. 178, 182 (1962).  "[T]he consideration of prejudice to

24   the opposing party … carries the greatest weight."  *Eminence Capital, LLC v. Aspeon, Inc.,* 316

25   F.3d 1048, 1052 (9th Cir.2003).  Absent prejudice or a "strong showing" of any other *Foman*

26   factor, there is a presumption in favor of granting leave to supplement.  *Id.*

27       **2.    Leave Denied.**

28       Plaintiffs move to supplement their complaint to add Hess Corporation as a defendant and

United States District Court
Northern District of California

to supplement factual statements made by Kushner in a presentation by his new company, Affinity Partners. Plaintiffs allege that Kushner identified one of his most significant accomplishments while in his father-in-law's administration to be "leading negotiations on the historic OPEC+ oil agreement in April 2020 among the United States, Saudi Arabia and Russia, which led to the largest oil production reductions in history." (Dkt. No. 109-1, Motion at 3.) Plaintiffs also allege that Kushner specifically referred to Hess Corporation's participation in the "deal to raise oil prices" in his nearly released memoir. (*Id.* at 4.)

Because the Court has already determined that Plaintiffs' claims are barred by the political question, act of state, and *Noerr-Pennington* doctrines, the Court finds the proposed addition of the Hess Corporation and Kushner's purported participation in the Trump administration still present non-justiciable political questions regarding the United States' foreign policy with respect to other oil-producing countries and public acts of foreign states and Defendants' possible efforts to petition the government for redress. The adjudication of these threshold questions requires dismissal of this action. Further supplementation of the complaint would be futile. Accordingly, Plaintiffs' motion for leave to supplement the complaint is DENIED.

**D.     Motion for Leave to File Motion for Reconsideration.**

**1.     Legal Standard.**

A motion for reconsideration may be made on one of three grounds: (1) a material difference in fact or law exists from that which was presented to the Court, which, in the exercise of reasonable diligence, the party applying for reconsideration did not know at the time of the order; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments presented before entry of judgment. N.D. Civ. L.R. 7-9(b)(1)-(3). The moving party may not reargue any written or oral argument previously asserted to the Court. *Id.*, 7-9(c).

**2.     Leave Denied.**

Plaintiffs seek leave to file a motion for this Court to reconsider its ruling disallowing the deposition of Jared Kushner based on alleged disclosures in his recently-published memoir. For the same reasons the Court finds it futile to allow Plaintiffs leave to supplement the complaint, the

Court finds the addition of Kushner as a witness futile and DENIES Plaintiffs lead to file a motion for reconsideration of its earlier order.

### CONCLUSION

For the foregoing reasons, the omnibus motion to dismiss filed by all defendants is GRANTED without leave to amend and the motion to dismiss filed by Energy Transfer is GRANTED.  Plaintiffs' motion for leave to supplement the complaint and for leave to file a motion for reconsideration are DENIED.

**IT IS SO ORDERED.**

Dated:  January 9, 2023

_____
JEFFREY S. WHITE
United States District Judge

United States District Court
Northern District of California